UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD STEISKAL,

        Plaintiff,

v.                                                 Case No. 12-C-1241

MICHAEL LEWITZKE, et al.

        Defendants.

**DECISION AND ORDER**

      Plaintiff Richard J. Steiskal Jr., an inmate incarcerated at Racine Correctional Institution in Sturtevant, Wisconsin, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. Steiskal alleges his Eighth Amendment rights were violated when Defendants were deliberately indifferent to his medical needs following a dental procedure performed on June 15, 2012. Steiskal further alleges that following the dental procedure Defendants intentionally ignored and thwarted his efforts to obtain a remedy within the prison in violation of his First and Fourteenth Amendment rights. Before the court is Defendants's Motion for Summary Judgment. Defendants seek summary judgment alleging that Steiskal failed to exhaust all available administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons given below, Defendants' Motion for Summary Judgment will be granted.

**I. BACKGROUND**

      Plaintiff Richard J. Steiskal, Jr. is an inmate at Racine Correctional Institution (RCI). The complaint arises from a series of events dating back to June 14, 2012, when inmate Steiskal was

informed that he had an infected tooth that needed to be extracted. Dr. Lewitzke, a dentist at RCI, prescribed a prescription of antibiotics for the infected tooth and on the next day performed the tooth extraction. Over the next week Steiskal developed pain in his jaw and noticed a foul tasting discharge.

On June 21, 2012 Steiskal returned to Dr. Lewitzke to be examined. Steiskal alleges that Dr. Lewitzke examined him and concluded there was no infection. (ECF No. 42 at ¶ 3.) Steiskal further alleges that Dr. Lewitzke denied his request for antibiotics and instructed him to return in one to two weeks if the symptoms continued. (*Id.*) Over the next week symptoms progressed to the point where Steiskal was taken by ambulance, on June 30, 2012, to Wheaton Franciscan Healthcare in Racine, Wisconsin. (ECF No. 53 ¶ 5.) Upon arriving at the hospital and undergoing a series of medical tests, Steiskal was diagnosed with Bell's palsy and was prescribed antibiotics and other medications. (*Id.*)

After returning from the hospital on July 5, 2012 Steiskal submitted an inmate complaint alleging inadequate dental care. (*Id.* ¶ 6.) The inmate complaint was returned by the Institutional Complaint Examiner (ICE) on July 11, 2012. (*Id.* ¶ 7.) The ICE informed Steiskal that his materials were being returned because before a complaint would be accepted by the ICE, Steiskal would have to 1) follow the proper chain of command noted in the inmate handbook, 2) attempt to contact the dental supervisor, Mr. Montagna, 3) provide written documentation of his attempts, and 4) resubmit the returned complaint along with the written documentation. (*Id.* ¶ 7.)

Upon the ICE's request, Steiskal wrote two letters to Mr. Montagna. (*Id.* ¶¶ 8, 9.) Thereafter, Steiskal was notified that Mr. Montagna was no longer with the RCI dental department and the letters had been forwarded to the dental director. (*Id.* ¶ 10.) Steiskal alleges that the ICE

provided him with false information and from that moment he could no longer trust the ICE to handle any of his further complaints. (*Id.* ¶ 11.) Steiskal alleges he filed a "Request for Review of Rejected Complaint " with the Warden which purportedly did not reach the Warden. (*Id.*) After Steiskal's attempt to file a request for review, Steiskal wrote a letter to the Warden expressing concerns about the alleged inadequate dental care and the difficulties with the institutional complaint examiner. (*Id.* ¶ 13.) The Warden's secretary responded with a letter expressing that the human services unit would continue to provide care for any health issues Steiskal experienced. (Demers Aff. Ex. C.)

Months later, on January 16, 2013, Steiskal submitted a "Request for Corrections Complaint Examiner Review" to the Department of Corrections in Madison, Wisconsin. (ECF No. 53 ¶ 14.) On January 17, 2013, the Corrections Complaint Examiner responded in a letter notifying Steiskal that his request could not be reviewed because he never submitted a complaint as to either issue. (Rose Aff. Ex. E.)

In response to Defendants's alleged violations of Steiskal's constitutional rights, Defendants now argue that Steiskal's claims are not properly before the Court because Steiskal failed to properly exhaust his administrative remedies as to either claim.

**II. Analysis**

Summary judgment shall be granted if the moving party shows from "the pleadings, depositions, answers to interrogatories, and admissions on files . . . that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of showing there is no dispute of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A dispute over a fact that "might affect the outcome of the suit" is a "material fact." *Id.* A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A nonmoving party's subjective beliefs without factual support are insufficient to raise a genuine issue of material fact. *McMillian v. Svetanoff*, 878 F.2d 186, 191 (7th Cir. 1989). If the nonmoving party is unable to present factual support and the record as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Prison Litigation Reform Act requires that all prisoners exhaust available administrative remedies before filing a federal lawsuit alleging violations of constitutional rights with respect to prison conditions. *See* 42 U.S.C. § 1997e(a). The objective of section 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)). The Seventh Circuit has held that "exhaustion is a precondition to suit" and requires a prisoner to have taken the necessary steps in seeking an administrative remedy within the prison before filing suit in court. *See Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). A suit which is filed by a prisoner before available administrative remedies have been exhausted must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *Id.* at 535.

In order to exhaust administrative remedies a prisoner must properly follow the rules governing the filing of a claim for each step the agency's administrative process requires. *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1024-1026 (7th. Cir. 2002) (holding that "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."); *see also Woodford v. Ngo*, 548 U.S. 81, 91-92 (2006) (holding that a prisoner must not only exhaust available remedies, but properly exhaust those available remedies in compliance with an agency's deadlines and other critical procedural rules.) The court determines whether a prisoner has properly exhausted administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

In Wisconsin, the Wisconsin Department of Corrections requires by law that all prisoners who file inmate complaints do so properly under the Inmate Complaint Review System (ICRS). *See* Wis. Admin. Code § DOC 310.04. Before any inmate may commence a lawsuit in court the inmate must "exhaust all administrative remedies that the department of corrections has promulgated by rule." Wis. Admin. Code § DOC 310.05.

Chapter DOC 310 of the Wisconsin Administrative Code requires that all complaints submitted by inmates be investigated by an institutional complaint examiner (ICE). Wis. Admin. Code. § DOC 310.04(2). The ICE has the authority to return, investigate, or recommend a decision to an appropriate reviewing authority. *See* Wis. Admin. Code § DOC 310.07(2)(a-c). "Prior to accepting [a] complaint, the ICE may direct [an] inmate to attempt to resolve the issue," outside the ICRS. Wis. Admin. Code § DOC 310.09(4). If issues cannot be resolved outside the ICRS an inmate may re-submit an inmate complaint for the ICE to investigate.

Here, Steiskal failed to properly exhaust the administrative remedies that were available to him. After Steiskal's unfortunate turn of events following the tooth extraction, Steiskal submitted an inmate complaint alleging inadequate dental care. The ICE returned his complaint directing him

5

to attempt to resolve the issue by contacting the dental supervisor and to then re-submit the complaint along with proof of his attempt(s) to resolve the issue. Although Steiskal attempted to contact the dental supervisor, and then contacted the warden, Steiskal failed to re-submit a complaint to the ICE. (Padgett Aff. ¶ 18.) Because Steiskal failed to follow instructions of the ICE and the overarching ICRS procedures, Steiskal did not properly exhaust his administrative remedies for his claim alleging deliberate indifference to a medical need.

Instead of re-submitting the complaint and following proper administrative procedure Steiskal decided to write a letter to the Warden complaining of issues related to his present claims. The letter submitted to the Warden does not raise a genuine issue of fact as to whether any available administrative remedies were exhausted, because the letter was not within the proper procedures for exhaustion under the ICRS. If Steiskal would have re-submitted the original complaint to the ICE along with the documentation showing an attempt to address the issue with the dental supervisor, step one of the ICRS procedure for exhaustion would have been achieved. Having failed to complete even step one, he obviously did not exhaust his administrative remedies.

Steiskal's second claim alleging that Defendants ignored or thwarted his efforts to obtain a remedy within the prison also fails. Directing him to attempt to resolve the issue informally does not thwart an inmates effort to exhaust. No action alleged by Steiskal prevented him from filing an inmate complaint with the ICE to initiate the ICRS procedure he was required to exhaust. A complaint must be filed in accordance with the ICRS procedures before exhaustion can occur. The Seventh Circuit applies a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. Exhaustion is required "even if the prisoner believes his efforts in securing relief will be futile." *See e.g., Booth v. Churner*, 532 U.S. 731 (2002); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir.

6

2008). Steiskal argues that he did not file an inmate complaint with the ICE office because he felt the ICE was being deceitful and any requests would continue to be ignored or thwarted. Steiskal's subjective feelings about the ICRS process and the ICE do not provide a reason for him not following ICRS procedure. Otherwise, any inmate could circumvent the exhaustion process just by expressing a subjective belief in its futility. Steiskal's argument that administrative remedies were made unavailable to him because he believed his requests would be ignored or thwarted does not create a genuine issue as to material fact to deny Defendants's Motion for Summary Judgment.

In sum, Steiskal failed to properly exhaust administrative remedies and therefore Defendants's Motion for Judgment will be granted. Steiskal's request for an evidentiary hearing, under *Pavey*, will be denied. It is clear from the record that Steiskal was afforded an opportunity to re-submit the offender complaint and begin the ICRS process of exhaustion, but failed to do so. Moreover, Steiskal's "Request for Corrections Complaint Examiner Review" which was filed after the present lawsuit was filed is another example that he did not properly exhaust his available administrative remedies. The Seventh Circuit has made it clear that exhaustion must occur before a lawsuit is commenced. *Perez*, 182 F.3d at 535. Because proper exhaustion has not occurred Defendants's Motion for Summary Judgment will be granted.

Finally, it is worth noting that even if Steiskal had properly exhausted his administrative remedies his complaint would not survive. Although Steiskal has had to endure an unfortunate number of events subsequent his tooth extraction and diagnosis of Bell's palsy, Steiskal's alleged inadequate dental care exhibited by Dr. Lewitzke would not meet the deliberate indifference framework as discussed in *Farmer v. Brennan*, 511 U.S. 825 (1994). The Seventh Circuit has held that "[f]or a medical professional to be held liable under the deliberate indifference standard, he

7

must make a decision that is 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2008) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). After examining Steiskal and exercising medical judgment, Dr. Lewitzke made the decision to not recommend antibiotics and to wait to see if Steiskal's symptoms progressed. Although Steiskal disagreed with Dr. Lewitzke, Dr. Lewitzke's decision does not rise up to the standard of deliberate indifference to serious medical needs required to constitute the cruel and unusual punishment prohibited by the Eighth Amendment.

**III. Conclusion**

Plaintiff Steiskal has failed to exhaust his administrative remedies. Accordingly, Defendants's Motion for Summary Judgment is **GRANTED** and Plaintiff Steiskal's section 1983 case is **DISMISSED**. The motion to appoint counsel is **DENIED**.

**SO ORDERED** this   11th   day of July, 2013.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

8